You will now hear Banco Safra. Good morning, Your Honors. Jeremy Lieberman on behalf of lead plaintiff Banco Safra. Your Honors, the Second Circuit requires that in order to satisfy the 10-B requirements of domesticity, one must, an absolute activist, this court ruled that one must plausibly allege a domestic transaction. And we would submit that the Second Amendment complaint and most certainly the proposed Third Amendment complaint clearly meets that standard. This court said we should look at the formation of contracts, we should look at where money changes hands, and we should look at the location of the parties. And when we do those things, we see clearly that a domestic transaction occurred. The Second Amendment, both in the Second Amendment complaint and the proposed Third Amendment complaint, all of the activities of the sellers are alleged to have occurred in the United States. There is no plausible reading, a reasonable inference other than that every single activity and action of the seller, of the counterparty, which is the seller, occurred within the United States. And that is just, that is, that's actually pled in the First Complaint, the Amendment complaint. The Second Amendment complaint is further clarified. And then when Judge Berman finally found a rule that was insufficient, we gave even more precise detail how every single activity and action of the seller occurred in the United States. Not only that, we allege that all the monies were transferred to pay for these bonds from bank accounts of plaintiffs in the United States, and they went to the bank accounts of the seller in the United States. Again, one of the prongs that absolute accuracy has suggested could prove a domestic transaction. In addition, even further cementing the domestic inference is the fact that TRACE, the Finner TRACE reporting, had reported these transactions. And TRACE only requires reporting transactions when they are domestic, when they are a U.S. transaction. And so all those allegations together, we believe, clearly fall within the provenance of absolute activists. They fall within the provenance of the other second, Giunta, of the Third Circuit case, Giorgio, which applies absolute activists. And clearly SEC... This is Judge Katzmann. Our test in absolute activists allows a plaintiff to establish a domestic transaction, as you know, based on the location where the seller incurs irrevocable liability, or the location where the buyer incurs irrevocable liability, the location where the title passes. Am I correct that you are primarily relying on the location where the sellers, that is, the broker-dealers, incur liability? That's absolutely correct. And we allege that clearly in the second amount of complaint, when Judge Berman had ruled that the location of a broker or dealer without more information is insufficient. We then sought to leave to amend, and then sought to amend the proposed third amount of complaint, which clearly gave precise detail as to how the transaction occurred, that the personnel all were located, we gave their addresses, we made it clear that the purchase order was made to a personnel sitting and located in the United States, and that the seller became irrevocably bound while located in the United States. There is no plausible inference based on these pleadings, other than that the seller was located in the United States. And so, really, Judge... My problem is this, and you can help me with this. When you look at the second amended complaint, what other information allows us to infer that Banker of Saffra incurred liability in the United States? The allegation that Banker of Saffra paid for the DeMarco notes with funds held in its bank accounts in New York seems more related, more pertinent to the question of where you, the buyer, incurred liability. I think we alleged that the council parties, the sellers, were located in the United States and we gave their addresses, and then we also alleged that the monies were paid or went through the bank accounts in the United States, and Judge Berman took issue with both of those allegations, really saying they were too vague, and saying that the broker-dealer doesn't tell me that where the broker-dealer incurred liability, and money going through could mean just money going anywhere. And so, we said... How do you respond to the view that the complaint doesn't allege that any particular people took specific actions at those addresses, in contrast with the Junta v. Dingham, where the complaint alleged that specific individuals had negotiated and agreed to buy and sell the securities at particular meetings in Manhattan? So we're not... We did not allege the names of the individuals working at the broker-dealer. We did only give their addresses, and that's true. If that's... If we're required all of a sudden now in a really impersonal market where you have banks buying from other banks, essentially, who are broker-dealers, to require that we allege the names of the people who they spoke to, and things like that, there's nothing simply in absolute activism that requires that. Again, in the second complaint, Judge Berman said, well, the broker-dealer doesn't tell me enough about what they did in the United States. And we said, well... I mean, if you look at Georgiou, Georgiou said the market-maker being in the United States was enough. And the broker-dealer really is functioning in the same capacity as the market-maker. It's buying for its own account, and then it's selling to a customer. And so we were relying on Georgiou when we did the second amendment complaint. If for some reason Georgiou, in relying on that, was insufficient, we said, we'll give this another try. And we did the proposed amendment complaint, and it's very clear. Every single action in a proposed third amendment complaint of the seller occurs in the United States. They are sitting in the United States when... This is just really just as a follow-up, because I'm having a little trouble understanding, and maybe you can focus me on specific allegations, which is what we're supposed to do here. Where is alleged, for example, and maybe this is also a follow-up to Judge Berman's concern, that the broker-dealer was acting, or broker-dealers were acting as principals, that is, as dealers trading in their own account in connection with these transactions? Well, in a proposed third amendment complaint, we make it clear the broker-dealer is the seller. They are the seller. We do address in our brief, when you look at Black's Law Dictionary and other sources as to what the definition is of a broker-dealer, in the OTC market context, the broker-dealer is the seller. They are buying on their own inventory, and they're selling that to the... A broker-dealer is a buyer and a seller, right? But I'm just interested, since they are the counterparty that you are, in these transactions, alleging are sellers of these debt securities, these notes, where do you say that they are acting as a principal for their own accounts? In the second amendment complaint, we say that they are the counterparty. In the third amendment complaint, we say they are the seller. If it's required that we say that they actually held title or own the securities, we can... Again, that's something that we would try and support. Because part of the problem is, you know, agree or disagree with the framework, but the irrevocable liability seems to suggest, to me at least, that there's got to be... If you're a liability, you're not an intermediary, you're a liable at some definitive point in the United States in connection with a particular transaction, a set of transactions. And it seems to also... That also seems to suggest that at some level in these transactions, in these debt transactions, you got to be trading for your own account, as opposed to an agent for someone else's account. That's the irrevocable nature of it. Certainly, the proposed third amendment complaint makes clear that the seller committed itself and bound itself at the time they agreed to the price with plaintiffs. That's the allegation in the complaint. I'm looking at paragraph 27 in the proposed third amendment complaint. And it goes through each transaction and makes clear that when they agreed on the price, they were bound to the transaction. That is the reality of the broker-dealer market, very much like a market maker. When you make a deal to sell stock to the market maker, you're done. You set the price, it's a deal. And that is the transaction of the broker-dealer. That is by definition what occurs with the broker-dealer. We did give in our briefing, which the court can really take notice of. Whose liability is that in that transaction? Who has the liability? We understand it to be the broker-dealer. The broker-dealer has taken ownership of the securities and has agreed to sell it to the plaintiffs. But even if that were not the case, even if they were merely an agent, they have the power to bind whoever else owns the securities to the transaction. And that's clear from paragraph 27 of the complaint. It's clear that the broker-dealer is the one. Once you set a price and quantity with the broker-dealer, the transaction is done. There's nobody else. In the over-the-counter market, there's nobody else to talk to and to buy your securities from other than the broker-dealer. And if further amendment needs to clarify that, then let it be. And we can certainly clarify that with both information from plaintiff's transactions and just information about the market generally. If that's what we're missing, then that certainly can be rectified. We don't think it's missing. We think if you look at paragraph 27 of the post-30 minute complaint, it's clear as day that our allegation is that to the point that the seller, it was the broker-dealer, which we say is the same thing, at the point that they agree to quantity and price, the transaction is done. Nobody can get... They must deliver that security. And so if there's any further amendment... I'm sorry. But what page is that in the appendix? I'm sorry. Oh, in the appendix? I'm going to struggle here. If you don't have it, then you can wait until the rebuttal. I just don't have it right now. Okay. It's in paragraph 27 of the post-30 minute complaint. Okay. All right. And we'll get you... That's fine. Thank you. Thank you. And furthermore, Judge Bergman... Questions?  I'm okay. Thank you. Thank you. You'll have three minutes in rebuttal.   Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Good morning, Your Honor. Thank you. Nathaniel Reed from Cohen and Grasser for Simarco Mineral Style Defendant Appellee. I will be arguing on behalf of all the defendants' appellees here. The court spent significant time in my opponent's argument, which is with the absolute activist standard. The case, of course, is governed by the standard. And in many ways, the specific teachings of absolute activist are directly relevant here. In particular, as the court was questioning opposing counsel with regard to actions by the seller, this court said in absolute activist that the location of the broker-dealer could be relevant to the extent that the broker carries out tasks that irrevocably bind the broker to buy or sell securities. And when one looks at the second amended complaint and the relevant allegations, which are at pages A409 and 410 of the record, you see absolutely no allegations whatsoever of any conduct by any broker-dealer. There's simply the allegation that they are located in the United States. And that's absolutely significant here as the court recognized in its questioning. What we need to know is who did what and where. And plaintiff has never offered those key facts. Not once. This is a self-described paradigmatic lead plaintiff in a securities fraud class action represented by a premier firm with extensive experience, also self-described. The standard is plain. The facts are within plaintiff's knowledge. These are trades that it alleges it conducted. It alleges it conducted with counterparties. And it has never pointed to the kinds of facts that this court has repeatedly recognized are necessary in order for plaintiff to meet its burden of showing facts plausibly alleging a U.S. transaction. And again, I go back to absolute activist in the context of amendment, which was mentioned in my opposing counsel's argument. In absolute activist itself, a relatively early case following the Morrison standard from the Supreme Court, the court needed to decide whether leave to amend would be granted. And what animated the court was that the plaintiff there said that you could come forward with underlying transactional documents, currently not part of the record in the case, as well as trading records, private placement memoranda, and other documents that would show the facts that this court needs in order to, if plaintiff could prove a domestic transaction. The plaintiff here has never come forward with those facts. Not in the second amended complaint, which was appropriate for the court to rule on and not grant leave to amend, exercising its discretion. And even if the court here considers the proposed third amended complaint, which we submitted should not, because it was submitted over a year after the court had already said your second amended complaint will be your last. But that proposed third amended complaint also includes no facts. This is Judge Katzmann. What significance, if any, should we place on the distinction between a broker and a dealer? Following up on the commentary, the district court relied on our statements in absolute activist and Petrobras that the location of a broker is not dispositive in establishing a domestic locus for a transaction. But here the transaction involves broker-dealers, who are more obviously constitute sellers of the securities for the purpose of the irrevocable liability test. So should we place any significance on that distinction between a broker and a dealer? No, Your Honor. Absolute activist expressly addressed the involvement of a location of a broker-dealer. That's the language of this court. In addition, and I think it was made clear in response to the questions from, I believe, Judge Loyer, there are no allegations in any of these complaints. None of the three leading up to the third complaint, which is the second amended complaint, nor the proposed third amended complaint that, in fact, any of the counterparties were acting on their own account. And so the court has left a guess. And with respect, that is not meeting its burden. Judge Katzmann? Please proceed, Judge Loyer. Okay, thank you. So there is, Mr. Mead, and I thank you for your argument. There is an allegation, and I'm trying to see if I can find it somewhere, I think, about the FINRA trace automated system, something that I'm a little familiar with that tracks U.S. domestic transactions, or at least that's the allegation. And I wonder if you might not be able to, if you might be able to help me figure out why that allegation, if we are to credit it as true, and if it's, you know, a factual allegation, isn't enough, at least at this stage, to say that they have pled, plausibly pled, the existence of a domestic transaction. Because if, for example, the trace system reported or listed 99.5% of the times only domestic transactions, and we were to find that out from the FCC or from FINRA itself, that, it seems to me, would make a difference. But maybe you can help me out with that. Yes, Judge, I'm happy to address that. The trace system, the allegation is that some of the secondary market transactions at issue here, which is a significant subset, but certainly not all of the transactions alleged. Well, that's what I'm, I'm focused not on, I guess, initial transactions, but on the secondary market transactions here. Yes, Your Honor. I will note, just on that one point, that plaintiff's allegations are the same with regard to their regulation as initial market transactions, which are unquestionably foreign. That exception is only available for initial market transactions conducted outside of the United States. And they make the exact same boilerplate allegations with regard to their secondary market transactions, which they allege are domestic. But coming to trace, it simply indicates, as the district court found below, that a U.S. broker-dealer was involved in one way or another with the transaction. There is nothing in this record, and nothing in the decision cited to this court, nor any decision that we have found, that says that the mere reporting of a transaction to trace shows that that transaction was domestic. It is unquestioned that the reporting takes place 15 minutes from the time of the transaction. It is also not disputed by plaintiffs that the relevant broker-dealer has not conducted the analysis that this court must undertake, and that the district court did undertake, as to under-outstood activists, as to whether or not this is a U.S. transaction that took place. I guess my follow-up question is, and I speak with a specific experience, why in the world would any entity report a transaction to FINRA that it doesn't have to report to? So, if it's required to report a domestic transaction to FINRA through this trace system, of course, but if it's not required to, and I'm just talking, again, we're at the plausibility phase, why would I accept that a company, or a principal, whoever, would report a financial transaction that it's not required to report to a self-regulatory organization? Fair question, Your Honor, and the answer is because there's no penalty for over-reporting, but there is a penalty for under-reporting under the FINRA regulations. So, I think a prudent broker-dealer designing a compliance program for a decision that has to be made within 15 minutes of the trade would be inclined to over-report rather than under-report. And again, with respect, reporting cannot be the end of the analysis, as Judge Rakoff found in the Petrobras case when looking at DTC settlement. He said, first of all, that's not the meaning of the mine. That's not the actual transaction. It's something that takes place after the transaction is complete, and that unquestionably is true of trace reporting as well. And further, DTC settlement is actually much closer to the transaction. It is actually when the record owner of the stock or the security is changed. But as Judge Rakoff found... That actually is evidence of liability. Could be construed that way, Your Honor. I would agree. Whereas trace is simply a reporting requirement, as you said, to a self-regulatory body. And again, the district court looked at the record before it and correctly found that nothing in the trace regulation states that non-U.S. transactions cannot be reported. And the plaintiff repeatedly says, only U.S. transactions are reported. But that's simply a conclusion. There are no facts. There is no data. There is no information to support that in this record. Is there a reason why we wouldn't ask the... I guess it would be not FINRA directly, but the SEC for its views on that? It's a little odd because this is in the context of a motion dismissed, but there's a slight dispute about what the trace reporting requirement is and what the trace reporting system reports. Your Honor, I don't think that question needs to be asked. It is plaintiff's burden to come forward with the plausible allegations here. They are a sophisticated plaintiff, represented by some of the most sophisticated lawyers doing this kind of work. It's incumbent on them to come forward with the plausible factual allegations on this point and any other to show that they have a U.S. transaction here. And they've simply failed to do so, both in the second amended complaint and this court need not consider the proposed third amended complaint for the reasons discussed below. But if the court does, you won't find any of these allegations there. Thank you. Thank you, Judge Gatzman. Mr. Reed, your time has expired. Judge Park, do you have... Unless Judge Park has a question or two. I guess I just wanted to follow up on Judge Loya's question about trace reporting. Your response, as I understand it, is that reporting may be over-inclusive and even though they're only required to report domestic transactions, they may well just include foreign ones because it's easier. I mean, can you shed any more light on that or point us to anything that suggests that that's somehow more plausible than the influence that plaintiffs are asking for, which is that why would you report it to FINRA unless it is U.S.? Again, Your Honor, we're talking about a subset and it's only about, I think, 70% or probably less of the trades at issue that were reported to trace. Yet again, plaintiff uses the exact same allegations, which I think is telling. It indicates that, in fact, these are not U.S. domestic transactions or more pointedly that plaintiff has not met its burden. And with respect to FINRA, allegations are a bit muddy in the record. It is not perfectly clear that a non-U.S. transaction would not be reported. For example, the FINRA FAQ on trace says that a transaction between an offshore branch of the broker-dealer to an onshore branch of the broker-dealer would need potentially to be reported. It is not perfectly clear that the purpose is, and it is certainly not in the record, that the purpose of trace is to keep a record of only U.S. domestic transactions. The purpose of the system is to keep a record of certain trace-eligible security transactions, which include a wide variety of notes, including these notes, which are issued by a Brazilian issuer. One other question, if I may just quickly. The plaintiff would have access to who the clearing broker is, right? And that's not included in the proposed amendment or in the previous complaint? Your Honor, yes. I believe the plaintiffs have... There's no reason not to believe that the plaintiffs who say that they engaged in these trades have access to everything they could possibly know about the trade, including the specific counterparty, how it was affected, whether by email or phone, on which date, at which prices. They have the trading records. They have trading tickets, presumably, and they have their own trading systems, but they've never come forward with those factual details, which Absolute Activist requires. Thank you. Thank you. Thank you, Mr. Lieberman. You'll have three minutes. Thank you, Your Honor. Your Honor, there's been a lot of focus, perhaps rightly so, on whether a broker-dealer is buying on its own accounts. And I do refer to page 7 in our reply brief, where we cite the Blackflaw Dictionary, where it says, the term broker-dealer is commonly understood to refer to a brokerage firm that engages in business of trading securities for its own accounts, i.e., as a principal, before selling them to customers. It's plain from the black-letter law, as it were, black-letter definition, that the broker-dealer, by definition, is one who is buying for his own account. And so that's evident from pleadings, from the Second Amendment complaint, and clearly from the proposed Third Amendment complaint. I'd like also to, you know, there was a question as to where in the docket were the precise allegations regarding the mechanics of the sale, and that is A1095, that's the proposed Third Amendment complaint, and paragraph 27 provides for each transaction a real list of how those transactions occurred, and the role of the seller in those transactions, and makes clear that the personnel for the sellers were located in the United States. They agreed, while being in the United States, they agreed to the prices and the quantities, and the point that they accepted the offer, which they accepted while in the United States, once that offer is accepted, they are irrevocably bound. They can no longer renege on that transaction. We go through each and every transaction with each and every seller, and make that abundantly clear. So we would submit, and just to make it even more clear, is that in the OTC market, the only way to buy bonds, the only practical way to buy bonds is to go to a broker dealer, that is the seller, that is the counterparty, that is in essence, you know, the market maker. You have in George O's Third Circuit... This is Judge Park, sorry. Is the clearing broker listed in there, and if not, why not? I didn't catch the question, I apologize. I'm asking about the clearing broker. The clearing broker, I don't know that in the OTC bond market, there is a clearing broker. And there's no evidence that there is. The defendants haven't raised that. And there's nothing in the record that even says there was a clearing broker in the OTC bond market. It's not like the depository trust corporation, where there's a clearance and a matching. To a certain degree, because there's less bonds being sold by different issuers, it's not a market like a stock market, where there is a clearing broker. So it's not clear ultimately. Clearly from the complaint, from defendants' own allegations or responses, from the forecourt's point of view, there is a clearing broker in this scenario. And so the answer is, I simply don't know. Mr. Lieberman, do the pleading specificity requirements in Rule 9 apply to this category of allegations relating to extraterritorial application? Of 10D. There's nothing from absolute activists that would indicate as such. But that's not my question. Do they generally apply? I mean, why shouldn't they apply? No, they shouldn't apply. 9D applies to allegations of fraud or misstatement. This is an allegation regarding where a transaction occurred. And so clearly, the default is Rule 8 applies, unless you fall into the categories where 9D should apply. And so clearly, absent defendants making a showing otherwise, Rule 8A should clearly apply in this situation. And really, this is a matter of... Of course, I can ask some very good questions here. I believe that the record answers those questions, particularly in this proposed third-amendment complaint. But even without the proposed third-amendment complaint, by definition, because the broker-dealer is buying on its own account, as we've shown, and because they were located in the United States, they would meet absolute activists. They meet clearly, if we look at Judge O in the Third Circuit, they meet those allegations. And if for any reason there's a need to amend, that's why we have the proposed third-amendment complaint. This Court very widely said, and lorally, this isn't... Amended pleadings are not games of gotcha. The first time we heard from Judge Berman was after the second-amendment complaint. That's the first time we've heard that the broker-dealer, those allegations are insufficient. We went ahead and promptly said, we can do much better. We did do much better. We showed very clearly, there is no plausible difference other than the seller sold the securities in the United States and bound itself in the United States. There's no plausible allegation. Thank you for your argument. Your time beyond expired. And we thank you both for your vigorous advocacy. The Court will reserve decision. The final case on the calendar, United States v. Stroming, is on submission. The Clerk will adjourn Court. Court is adjourned.